# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| ANTWAINE CLARKE, individually, and on behalf of all others similarly situated, | Case No.: 2:23-cv-11648 |
| | Hon. Stephen J. Murphy, III |
| Plaintiff, | Hon. Mag. Kimberly G. Altman |
| v. | **SETTLEMENT AGREEMENT AND RELEASE OF CLAIMS** |
| ADCO PRODUCTS INC., a Delaware corporation, | |
| Defendant. | |

_____/

Antwaine Clarke (on behalf of himself and on behalf of all others similarly situated), Defendant ADCO Products, LLC (improperly identified as ADCO Products, Inc. in the Complaint), and their respective counsel of record, enter into this Settlement Agreement.

## I.      RECITALS AND BACKGROUND

1.      On July 12, 2023, Plaintiff Antwaine Clarke ("Clarke"), filed his Collective Action Complaint and Jury Demand against ADCO Products, Inc., alleging a putative collective action under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* ("FLSA") seeking overtime wages on behalf of himself and a putative collective who were paid some overtime for those hours worked in excess of 40 hours a week, but at a rate that did not include shift differentials as required by the FLSA.  [Dkt. No. 1.]

2.      The Parties agreed to participate in nonbinding, facilitative mediation on behalf of the employees for the two ADCO Products, LLC facilities located at Michigan Center, Michigan and Chagrin Falls, Ohio.  This mediation took place on January 30, 2024, under the direction of experienced FLSA mediator, David Philips, which culminated in a tentative settlement for employees of the two ADCO Products LLC facilities.

3.      At mediation, the Parties also agreed to continue discussing a possible expanded settlement that would include multiple other entities related to or affiliated with the H.B. Fuller Company.  Subsequently, additional data was provided for other H.B. Fuller Company-related locations and facilities and the Parties' subsequent discussions culminated in an agreement on settlement terms that would include these additional facilities.

## II.    PARTIES' STATEMENTS AND RECOGNITION OF THE BENEFITS OF SETTLEMENT

4.      It is the desire and intention of the Parties that this Settlement Agreement shall, for the Releasing Persons, fully, finally, and forever completely settle, compromise, release, and discharge Released Persons from all Released Claims as described in Article VIII, *infra*. Capitalized terms not otherwise defined in the body of this Settlement Agreement shall have the meanings ascribed to them in Article III, *infra*.

5.      Plaintiffs' Counsel conducted a thorough investigation of the claims asserted against Defendant in the litigation and that relate to or could have arisen out of the same facts alleged in the litigation or relating to Plaintiffs' employment, including both asserted and unasserted claims. Based on their independent investigation and evaluation, Plaintiffs' Counsel believes that the settlement with Defendant in the Litigation for the consideration of and on the terms set forth in this Settlement Agreement is fair, reasonable, and adequate, and is in the best interest of Plaintiffs and the putative collective considering all known facts and circumstances, including the uncertainty and risk of the outcome of further litigation, and the difficulties and delays inherent in such litigation.

6.      Released Persons expressly deny any liability or wrongdoing of any kind associated with all past and present matters, disputes, claims, demands, and causes of action of any kind whatsoever in the Litigation. Released Persons contend they have always complied with federal and state laws. By entering into the Settlement Agreement, the Released Persons do not admit any liability or wrongdoing and expressly deny the same. Nothing in the Settlement Agreement exchanged and agreed by the Parties, or any motions filed or Orders entered pursuant to the Settlement Agreement, may be construed or deemed as an admission by Defendant or any of the Released Persons of any liability, culpability, negligence, or wrongdoing, and the Settlement Agreement, each of its provisions, its execution, and its implementation, including any motions filed or Orders entered, shall not in any respect be construed as, offered, or deemed admissible as evidence, or referred to in

any arbitration or legal proceedings for any purpose, except in an action or proceeding to approve, interpret, or enforce the Settlement Agreement. Furthermore, neither the Settlement Agreement, nor any motions filed, settlement offers and/or proposals, and information and/or documents exchanged by the Parties, or Orders entered pursuant to the Settlement Agreement, shall constitute an admission, finding, or evidence that any requirement for representative litigation or class certification was satisfied or not satisfied in the Litigation or any other action, except for the limited settlement purposes pursuant to the terms of the Settlement Agreement.

7.     This Settlement Agreement may be terminated pursuant to Article XI, "Termination of Settlement Agreement," provided that, in such event this Settlement Agreement, and the terms hereof, shall not be offered, received, or construed as an admission of any kind as to liability, damages, whether any class or collective action is certifiable, or any other matter. All Parties hereto have entered into this Settlement Agreement with the intention to avoid further disputes and litigation with the attendant inconvenience and expense.

8.     The Parties agree to cooperate and take all steps necessary and appropriate to obtain the Court's approval of the terms of the Settlement Agreement, to effectuate all aspects of the Settlement Agreement, and to dismiss the Litigation with prejudice upon approval of the terms of the Settlement Agreement and by operation of the Settlement Agreement.

9.     The Parties shall request that the Court approve the Settlement Agreement with respect to all actions and claims settled in this Settlement Agreement.

10.    This Settlement Agreement is contingent upon the approval of the Court and the satisfaction of the other terms set forth in this Settlement Agreement. Should the Court not approve the Settlement Agreement, both parties reserve all rights. Defendant does not waive, and instead expressly reserves, its rights to move for decertification of any conditionally certified class, or to challenge the propriety of class certification for any purpose in the Litigation should the Court not approve this Settlement Agreement and/or enter an approval order.

## III.   DEFINITIONS

11.    "Approval Order" refers to an order of the Court: (i) asserting jurisdiction over the claims in the Litigation and the implementation and administration of this Settlement Agreement; (ii) granting approval of this

Settlement Agreement on the terms provided herein (or as the same may be modified by subsequent mutual agreement, in writing, of the Parties), adjudging the terms of the Settlement Agreement to be fair, reasonable and adequate, and directing consummation of its terms and provisions; (iii) appointing Antwaine Clarke as the Representative Plaintiff; (iv) dismissing the Litigation with prejudice; (v) retaining jurisdiction to enforce the Settlement Agreement; and (vi) entering judgment dismissing the Litigation with prejudice.

12.    "Court" refers to the court having jurisdiction of the Litigation at any subsequent stage, currently in the United States District Court for the Eastern District of Michigan.

13.    "Defendant" means ADCO Products LLC, and its past, present, or future affiliates, subsidiaries, and parents at any level, including the H.B. Fuller Company; Adhesives Packaging Specialties LLC, Peabody, MA; Bacon Adhesives, Irvine, CA; Engent Inc., Norcross, GA; Extreme Adhesives, Raymond, NH; HB Fuller, Aurora, IL; HB Fuller, Bellevue, OH; HB Fuller, Blue Ash, OH; HB Fuller, Covington, GA; HB Fuller, Elgin, IL; HB Fuller, Frankfort, IL; HB Fuller, Fridley, MN; HB Fuller, Grand Rapids, MI; HB Fuller, Maple Grove, MN; HB Fuller, Mesquite, TX; HB Fuller, Paducah, KY; HB Fuller Pilot Facility, MN; HB Fuller, Roseville, CA; HB Fuller, Scottsdale, IL; HB Fuller, Seneca, IL; HB Fuller, St. Paul, MN; HB Fuller, Tucker, GA; HB Fuller, Vancouver, WA; HB Fuller Construction Products, Dalton, GA; HB Fuller Construction Products, Edison, NJ; HB Fuller Construction Products, Gainesville, FL; HB Fuller Construction Products, Houston, TX; HB Fuller Construction Products, La Mirada, CA; HB Fuller Construction Products, La Mirada (Production), CA; HB Fuller Construction Products, Mansfield, TX; Royal Adhesives and Sealants, Wilmington, CA; Royal Adhesives and Sealants, Ball Ground, GA; Royal Adhesives and Sealants, Simpsonville, SC; Royal Adhesives and Sealants, Syracuse, NY; and Royal Adhesives and Sealants, Wilmington, CA.

14.    "Effective Date" refers to the date that the Court enters an Approval Order.

15.    "Final Settlement Payment" refers to the calculation set forth in Article V, "Terms of Settlement."

16.     "Individual Settlement Payment" means the net amount that shall be paid to each Plaintiff based on the distribution formula described herein.

17.     "Litigation" means civil action *Antwaine Clarke, individually and behalf of all others similarly situated, Plaintiff, v. ADCO Products Inc., a Delaware corporation, Defendant*, Case No. 2:23-cv-11648-SJM-KGA, in the U.S. District Court for the Eastern District of Michigan.

18.     The "Maximum Gross Settlement Amount" means $650,000.00, which represents the maximum amount that Defendant would pay pursuant to this Settlement Agreement, regardless of distribution, and is inclusive of final settlement payments, Plaintiffs' Counsel's fees and costs, Service Payment, and Settlement Administration Costs, but exclusive of employer-side payroll taxes, which will be paid outside (and in addition to) the gross settlement amount.  Plaintiff's costs not to exceed $20,000.00 are to be paid out of the gross settlement amount in addition to Plaintiffs' Counsel's fees of $216,666.66.  Additionally, Settlement Administrator costs in an amount not to exceed $20,000.00 are to be paid from gross settlement amount.  A service payment to the named Plaintiff Antwaine Clarke in the amount of $2,500.00 shall also be paid from the gross settlement amount.

19.     "Opt-In Plaintiffs" refers to those individuals who submit timely written consents to join the Litigation, as reflected on the Court's docket sheet, and who worked for one or more Released Persons during the Release Period.

20.     "Parties" refers to Plaintiffs and Defendant in the litigation and, in the singular, refers to any of them, as the context makes apparent.

21.     "Plaintiffs" refers to Antwaine Clarke and Opt-In Plaintiffs in the Litigation. References to Plaintiff in the singular form refer to individuals included in the group defined as "Plaintiffs."

22.     "Plaintiffs' Counsel" refers to the law firms of Sommers Schwartz, P.C. and Melmed Law Group P.C.

23.     "Plaintiffs' Counsel's fees and costs" means the total amount of Plaintiff's Counsel's attorneys' fees, costs, and expenses to be approved by the Court in connection with their representation of Plaintiff in the Litigation.  Plaintiffs' Counsel's fees will equal 33 and 1/3% of the Maximum Gross Settlement Amount, or $216,666.66.  Plaintiffs' Counsel's cost reimbursement will not exceed $20,000. Defendant will not oppose any application for attorneys' fees and costs up to and

including these amounts. In no event shall the total distribution and payments made by Defendants, including but not limited to Plaintiffs' Counsel's fees and costs, exceed the Maximum Gross Settlement Amount.

24. "Release Form" refers to the acknowledgement on the back of the settlement payment check by which a particular Plaintiff agrees that by signing the check, he or she acknowledges the Released Claims are, as to him or her, released as set forth herein in Exhibit A.

25. "Released Claims" refers to the released claims set forth in Article VIII.

26. "Released Persons" refers to ADCO Global, Inc., ADCO Products, LLC, Bacon Acquisitions, LLC, BeardowAdams, Inc., Engent, Inc., Eternabond, LLC, H.B. Fuller Adhesive Systems, LLC, H.B. Fuller Company, H.B. Fuller Company Foundation, H.B. Fuller Construction Products, Inc., H.B. Fuller Industrial, Inc., H.B. Fuller International Holdings Corp., H.B. Fuller Medical Adhesive Technologies, LLC, HBF Holdings, LLC, Royal Acquisition Corp., Royal Adhesives and Sealants, LLC, Royal Holdings, Inc., Seneca Polymer Co., Simpsonville Polymer Co., Simpsonville Properties, LLC, Willow Lake Nature Preserve Foundation, and their past, present, and future parent companies, affiliates, subsidiaries, divisions, predecessors, successors, partners, owners, joint venturers, affiliated organizations, and each of their shareholders, insurers, reinsurers and assigns, and each of their past, present and future officers, directors, trustees, agents, employees, attorneys, contractors, representatives, employee benefits or welfare programs or plans (including the administrators, trustees, fiduciaries, and insurers of such programs or plans) sponsored or administered by Defendant (including its affiliates), and any other persons or entities acting on its or their behalf, and any party that was or could have been named as a defendant in the Litigation.

27. "Releasing Persons" means Opt-In Plaintiffs, each one, and his or her respective agents, heirs, beneficiaries, devisees, legatees, executors, administrators, trustees, conservators, guardians, estates, personal representatives, successors-in-interest, and assigns that accepts payment of his or her pro rata share of the settlement.

28. "Representative Plaintiff" means Antwaine Clarke.

29. "Service Payment" means the amount to be approved by the Court for payment to Representative Plaintiff in recognition of his efforts on behalf of Plaintiffs, it being understood that the Service Payment is included within the

Maximum Gross Settlement Amount. The Service Payment will not be subject to tax withholdings and will be reported on IRS From 1099. The Service Payment shall be $2,500.00 to be paid from the Maximum Gross Settlement Amount.

30. "Settlement Administration Costs" means the fees, costs, and expenses associated with the Third Party Administrator's administration of this settlement of the litigation. The Settlement Administration Costs shall not exceed $20,000 to be paid from the Maximum Gross Settlement Amount, in addition to Plaintiffs' Counsel's fees.

31. "Settlement Agreement" refers to this Stipulation and Settlement Agreement entered into by the Parties in the Litigation.

32. "Settlement Notice" refers to the form of notice, substantially in the form of Exhibit B, to be directed to putative collective members in the Litigation. The purpose of the Settlement Notice is to inform putative collective members about the Settlement Agreement and settlement of the Litigation.

33. "Settlement Payment" refers to each Plaintiffs' share of the Settlement Proceeds. Fifty percent (50%) of the total Settlement Payment due to each Opt-In Plaintiff shall be paid as W-2 wages—subject to usual payroll taxes and withholdings—and fifty percent (50%) as a 1099 payment.

34. "Release Period" means the time period between July 12, 2020 and September 1, 2023.

35. "Third Party Administrator" means Atticus Administration, LLC, the firm designated by the Parties to effectuate the settlement by distributing final settlement payments and any other tasks specified in this Settlement Agreement and/or by order of the Court.

## IV. TERMS OF THE MAXIMUM GROSS SETTLEMENT AMOUNT

36. Defendants will pay the portion of the Maximum Gross Settlement Amount that is owed to the Opt-In Plaintiffs, along with the Plaintiffs' Counsel's fees and costs, and Service Payment amounts, to the Third-Party Administrator fifteen (15) business days after Effective Date.

37.     Any amount of the Maximum Gross Settlement Amount that is not claimed by a potential Opt-In Plaintiff shall be distributed as final settlement payments after the 180-day check cashing period shall be retained by Defendant.

## V.     TERMS OF SETTLEMENT

38.     As soon as practicable after the Settlement Agreement is executed by Representative Plaintiff (on behalf of himself and Opt-In Plaintiffs), Defendant, and Plaintiffs' Counsel, the Parties shall submit this Settlement Agreement (including all exhibits referenced herein) to the Court with a proposed Approval Order. The Parties agree to use their best efforts to secure an Approval Order from the Court.  Counsel for Defendant will prepare the Motion for Approval, if necessary.

39.     Representative Plaintiff confirms that he has no current plan or intention to file, join in, assist with, or solicit others to file or join in or assist with any sort of legal action against Defendant or any Released Party.

40.     Individual Settlement Payments for each Plaintiff will be calculated and apportioned from the Maximum Gross Settlement Fund based on the number of workweeks each Plaintiff was engaged by Defendant during the Release Period, which runs from June 12, 2020 through September 1, 2023.  Plaintiffs' Counsel will propose an allocation of the Net Settlement Fund for the putative collective members—after deduction of the fees and costs discussed above. The allocation will be subject to Defendants' approval, but approval will not be unreasonably withheld. Each Opt-In Plaintiff shall receive at least $20.00 as the minimum payment.  After the Third Party Administrator mails the Settlement Notice via First Class Mail, each recipient shall have 30-days from the mailing of Settlement Notice to return their consent to join forms.  Only those recipients of the Settlement Notice who timely return their consent to join forms (i.e., postmarked by the 30-day deadline) will be eligible to receive an Individual Settlement Payment.

41.     Within ten (10) calendar days after the Effective Date, the Third Party Administrator shall mail to Plaintiffs the Settlement Notice, attached as Exhibit B hereto.  The Notice shall be tailored for each Plaintiff (1) to indicate the current mailing address that the Settlement Administrator has on file for that Plaintiff; (2) to provide instructions to and a mechanism for the Plaintiff to securely update their mailing address for purposes of receiving the Settlement Payment, and (3) to provide the estimated Individual Settlement Payment that he or she will receive under this Settlement.

42.     Prior to the mailing referenced in Art. V, herein, the Third Party Administrator shall attempt to confirm the accuracy of the addresses of Plaintiffs through the United States Post Office's National Change of Address ("NCOA") database. All mailings by the Third Party Administrator shall be by first class mail. If a mailing is returned as undeliverable, the Third Party Administrator will perform reasonable address searches and resend by first class mail the Court-authorized Settlement Notice to Plaintiffs for whom it obtains more recent addresses. The Third Party Administrator will maintain a detailed log of all mailing attempts and will notify Plaintiffs' Counsel and Defendant's counsel within five (5) business days of any mailings that have been returned as undeliverable.

43.     The Third Party Administrator shall mail a Court-authorized Settlement Notice to Plaintiffs who contact the Third Party Administrator during the time period between the initial mailing and the Response Date and request that the documents listed in this paragraph be re-mailed.

44.     Plaintiffs' Counsel shall not be barred by this Settlement Agreement from communicating with or responding to inquiries they receive from Plaintiffs. Nothing in this Settlement Agreement shall be construed to prevent Defendant from communicating with any of its employees.

45.     Plaintiffs are subject to this Settlement Agreement by operation of the filing of their consents to join the Litigation. In order to receive a full potential settlement payment, each Plaintiff must properly complete and submit a Consent Form to the Third Party Administrator before the Plaintiff's Individual Settlement Payment will be issued, as directed in the Settlement Notice.

46.     Following the mailing of the Court-approved Settlement Notice, the Third Party Administrator shall send counsel for the Parties any reports regarding the administration of the Settlement Agreement as needed or requested.

47.     Thirty (30) days after the initial mailing of the Court-approved Settlement Notice, the Third Party Administrator shall mail, via First Class United States mail, a Settlement Payment reflecting the Plaintiffs' Individual Settlement Payment. The Third Party Administrator shall mail the final settlement payment to the most recent address that the Third Party Administrator has on file for Plaintiffs.

48.     Each Plaintiff will have one hundred eighty (180) calendar days from the date on which the Individual Settlement Payments are postmarked to negotiate his or her settlement check. If any settlement check is not negotiated in that period

of time, that settlement check will be voided, and a stop-payment will be placed on the settlement check. Any Individual Settlement Payment or portion thereof that remains unclaimed for any reason one hundred eighty (180) calendar days following the mailing of the final settlement payments shall be deemed unclaimed. In such event, those Plaintiffs will be deemed to have irrevocably waived any right in or claim to a final settlement payment. Neither Defendant, nor counsel for Defendant, Plaintiffs' Counsel, or Plaintiffs shall have any liability for lost or stolen settlement checks, for forged signatures on settlement checks, or for unauthorized negotiation of settlement checks. Without limiting the foregoing, in the event a Plaintiff notifies the Third Party Administrator that he or she believes that a settlement check has been lost or stolen, the Third Party Administrator shall immediately stop payment on such check and issue a new check(s).

49.     The Third Party Administrator shall ensure that all checks to Plaintiffs shall include an acknowledgement on the back of the check by which the Plaintiff indicates that by signing the check, he or she acknowledges the Released Claims are released as set forth in Exhibit A, attached hereto.

## VI.   PLAINTIFFS' COUNSEL'S FEES AND COSTS

50.     The Parties' agree that Plaintiffs' Counsel will receive 33 and 1/3% of the Maximum Gross Settlement Amount, or $216,666.66, subject to Court approval. Plaintiffs' Counsel will also receive a reimbursement in an amount not to exceed $20,000.00 for costs and expenses incurred by Plaintiffs' Counsel in connection with their representation of Plaintiffs in the Litigation. If the Court requests a separate fee petition, Plaintiffs' Counsel will submit a fee petition in an amount not to exceed $216,666.66 and Defendant will not oppose the fee petition.

51.     If the Court rules that any amount requested by Plaintiffs' Counsel for attorneys' fees, expenses or costs is excessive and reduces the same, only the reduced amount will be deemed to be Plaintiffs' Counsel's fees and costs for purposes of this Settlement Agreement and the remaining amount will be retained by Defendant.

52.     Payment of Plaintiffs' Counsel's fees and costs to Plaintiffs' Counsel as set forth in this Settlement Agreement shall constitute full satisfaction of any and all obligations by Released Persons to pay any person, attorney, or law firm (including but not limited to Plaintiffs' Counsel) for attorneys' fees, expenses, or costs (including but not limited to any fees, costs, and expenses related to testifying and non-testifying experts and consultants) incurred on behalf of Plaintiffs and shall relieve the Released Persons of any other claims or liability to any person for any

attorneys' fees, expenses, and costs (including but not limited to any fees, costs, and expenses related to testifying and non-testifying experts and consultants) to which any person may claim to be entitled on behalf of any Plaintiff. Upon payment of Plaintiffs' Counsel's fees and costs hereunder, Plaintiffs' Counsel and the Plaintiffs shall release Released Persons from any and all claims for attorneys' fees, expenses, and costs (including but not limited to any fees, costs, and expenses related to testifying and non-testifying experts and consultants) relating to the Litigation.

53.    Plaintiffs' Counsel shall be paid Plaintiffs' Counsel's fees and costs via electronic means. The payment shall be distributed by the Third Party Administrator within five (5) days after the receipt of fund by Defendant. Plaintiffs' Counsel shall provide the Third Party Administrator with any information required to effectuate such payment, including providing the Third Party Administrator with a completed IRS Form W-9. The Third Party Administrator will issue Plaintiffs' Counsel an IRS Form 1099 for their Court-approved award of Plaintiffs' Counsel's fees and costs.

## VII.   SERVICE PAYMENT

54.    Subject to Court approval, the Parties agree that Plaintiff Antwaine Clarke will receive from the Maximum Gross Settlement Amount a service payment in an amount not to exceed $2,500.00 dollars.  The Service Payment will be made to Representative Plaintiff in recognition of the work and services he contributed to the respective case in the Litigation including, but not limited to, investigative work, meetings with Plaintiffs' Counsel, assumption of risks, and serving as the putative collective action representative. If the Court does not approve the agreed amount, payment of Service Payment shall be made in an amount approved and determined by the Court, provided that in no event shall the aggregate of the Plaintiffs' Counsel's fees and costs, Service Payment and Settlement Pool exceed the Maximum Gross Settlement Amount.

55.    The Third Party Administrator will make the Service Payment (in the amount approved by the Court) within five (5) calendar days after receipt of funds by Defendant.

56.    The Service Payment shall be treated as non-wage income, and the Third Party Administrator shall issue a Form 1099 to Representative Plaintiff reflecting the value of such Service Payment.

## VIII.  RELEASE OF CLAIMS; WAIVER; ASSIGNMENT OF RIGHTS

57.     In order to settle the Litigation, and as consideration for Defendant's payment of the Maximum Gross Settlement Amount and the other good and valuable consideration described herein, Plaintiffs agree to release any claims they may have against Released Persons as described herein.

58.     "Released Claims" shall mean the following: effective as of the Effective Date, the Releasing Persons shall be deemed to forever completely settle, compromise, release, and discharge Defendant and the Released Persons from any and all wage claims based on alleged failure to pay overtime, alleged failure to properly compute hourly base pay including non-discretionary bonuses and shift differentials that were pled or which could have been pleaded based on the facts alleged in the Litigation, which accrued at any time on or before the present day, including any such disputes, claims, demands, rights, liabilities, expenses, damages, losses of any kind, and causes of action, whether at common law, pursuant to statute, ordinance, or regulation, in equity or otherwise, and whether arising under federal, state, or other applicable law, which any Releasing Person has or might have, known or unknown, asserted or unasserted, that are based upon or arise out of or reasonably could have arisen out of the facts, acts, transactions, occurrences, events or omissions alleged in the Litigation or by reason of the negotiations leading to this Settlement Agreement, even if presently unknown and/or un-asserted, that occurred from July 12, 2020 through September 1, 2023.

59.     "Representative Plaintiff's Released Claims" shall mean the following: effective as of the Effective Date, the Representative Plaintiff shall release and discharge Defendant and the Released Persons from any and all claims, demands, damages, monies, injunctive relief, attorneys' fees, liabilities and/or causes of action of whatever kind or character, whether known or unknown, which Representative Plaintiff has asserted or could have asserted against Defendant and the Released Persons arising out of or relating in any way to any acts, circumstances, facts, transactions, or omissions occurring prior to the date Representative Plaintiff signs this Agreement. This release includes, but is not limited to all claims that could have been made for unlawful discrimination, harassment, retaliation, and reasonable accommodation; related to terms and conditions of employment; for compensation or benefits; and/or for wrongful termination of employment under Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act, the Civil Rights Act of 1866, the Age Discrimination in Employment Act of 1967 (ADEA), the Family and Medical Leave Act, the Employee Retirement Income Security Act (ERISA),

the National Labor Relations Act (NLRA), the Uniformed Services Employment and Reemployment Rights Act, the Worker Adjustment and Retraining Notification Act, the Michigan Elliott-Larsen Civil Rights Act, the Michigan Persons With Disabilities Civil Rights Act, the Michigan Wage Payment Act, the Polygraph Protection Act of 1981, the Michigan Whistleblower's Protection Act, the Michigan Paid Medical Leave Act, the Bullard-Plawecki Employee Right to Know Act, claims for retaliation for engaging in protected conduct under the Michigan Workers' Disability Compensation Act, any amendments to the foregoing, or any other federal, state, or local statute, rule, ordinance or regulation, and in equity or under common law for tort, breach of contract, wrongful discharge, defamation, emotional distress, and negligence. Representative Plaintiff is not releasing any claims that cannot be released as a matter of law, any claims or rights to any vested benefits that he may have, or his right to pursue an action to enforce this Agreement.

60.     The Releasing Persons further covenant and agree that, since they are settling disputed claims, they will not accept, recover or receive any back pay, liquidated damages, other damages, penalties, or any other form of relief based on any of the released claims or any claims asserted or settled in the litigation which may arise out of, or in connection with any other individual, representative, collective, class, administrative, or arbitral proceeding pursued by any individual(s), class, union, or any federal, state or local governmental agency against any of the Released Persons. Releasing Persons further acknowledge that they are enjoined from pursuing any claim settled, compromised, released, and/or discharged as part of this settlement and Settlement Agreement that Releasing Persons have, had, might have or might have had against Defendant and/or any of the Released Persons based on any act or omission that occurred from July 12, 2020 through September 1, 2023. Releasing Persons will not file, cause to be filed, or affirmatively join or opt in, as a collective or class member, or beneficiary in any lawsuit with respect to any claims released under the Release of Claims and, if they become aware that they were involuntarily joined in any lawsuit against any Released Persons with respect to any claims released under the Release of Claims, Releasing Persons agree to waive their right to any recovery that may result from such lawsuit or proceeding, and not to pursue claims on her/his own behalf. Notwithstanding the foregoing, nothing prevents or limits Releasing Persons from filing a charge or participating in an investigative proceeding of the Department of Labor or other governmental agency.

61.     Representative Plaintiff represents and warrants that nothing that would otherwise be released herein has been assigned, transferred, or hypothecated or purportedly assigned, transferred, or hypothecated to any person or entity, any claim

or any portion thereof or interest therein, including, but not limited to, any interest in the Litigation, or any related action. Upon the Effective Date of this Settlement Agreement, Representative Plaintiff shall be deemed to have given this warranty.

62.     Plaintiffs are bound by the terms and conditions of this Settlement Agreement, the Approval Order, and the releases set forth herein.

## X.     SETTLEMENT ADMINISTRATION.

63.     The Settlement Administration Costs shall not exceed $20,000 to be paid from the Maximum Gross Settlement Amount, in addition to Plaintiffs' Counsel's fees.

64.     As described above, the Third Party Administrator and/or Plaintiffs' Counsel will: (i) calculate the Settlement Pool amount; and (ii) calculate the potential settlement payments as to each Plaintiff, it being understood that such calculations are subject to Defendant's approval, but approval will not be unreasonably withheld, and subject to the understandings and limitations set forth in Art. V.

65.     The Parties agree that Atticus Administration, LLC shall be engaged to serve as the Third Party Administrator for this Settlement Agreement, if approved by the Court. To that end, the Third Party Administrator shall perform the specific tasks assigned to the Third Party Administrator in the Settlement Agreement and/or by order of the Court, and only those tasks (including tasks which are incidental and reasonably necessary to adequately effectuate those tasks), unless otherwise agreed to by the Parties.

66.     The Third Party Administrator will perform all of the administrative duties assigned herein, including (i) formatting, printing, mailing, and emailing to Plaintiffs the Settlement Notice; (ii) establishing and maintaining the Qualified Settlement Fund (QSF); (iii) obtaining a taxpayer ID for the QSF and opening a checking account for the settlement fund; (iv) transferring monies from the QSF in accordance with the Settlement Agreement and Approval Order; (v) printing checks for and mailing final settlement payments to Plaintiffs, subject to the conditions herein; (vi) printing checks for and mailing the Service Payment to the Representative Plaintiff, subject to the conditions herein; (vii) ascertaining current address and address information, including reasonable address searches where a forwarding address is not provided, for each Settlement Notice returned as undeliverable and conducting a second mailing to the current address, if ascertained; (viii) maintaining adequate records of its activities, including the dates of the mailing

of Settlement Notice and mailing of Settlement Payments and returned mail; (ix) handling stop payment/reissue check requests; (x) performing all tax reporting duties and filings required by federal, state, or local law; (xi) transmitting payment of Plaintiffs' Counsel's fees and costs; (xii) referring to counsel for the Parties all inquiries by Plaintiffs regarding matters not within the Third Party Administrator's duties specified herein; (xiii) confirming in a declaration the Third Party Administrator's completion of the administration of the Settlement Agreement; (xiv) timely responding to communications from Plaintiffs' Counsel and counsel for Defendant regarding the administration process; (xv) such other tasks contained in the Settlement Agreement; and (xvi) such other tasks as counsel for the Parties mutually agree.

67.     Plaintiffs' Counsel and Defendant's counsel have the right to review and approve any and all documents contemplated by this Settlement Agreement (e.g., Settlement Notice, Release Form, mailing envelopes, and any deficiency letters contemplated herein) to be mailed by Third Party Administrator prior to their mailing, and the Third Party Administrator may not mail any documents without first receiving written approval to send the documents from Plaintiffs' Counsel and Defendant's Counsel.

## XI.    TERMINATION OF SETTLEMENT AGREEMENT.

68.     Grounds for Termination of Settlement Agreement: Plaintiffs' Counsel or counsel for Defendant may terminate, as described below, the Settlement Agreement if the Court declines to enter an Approval Order in the form substantially as submitted by the Parties in the Litigation, or the settlement as agreed does not become final for any reason, provided, the Parties agree to work cooperatively and in good faith, including mediating any unresolved differences with David Philips within fourteen (14) calendar days (or as soon thereafter as possible based on Mr. Phillips's availability) to address and resolve any concerns identified by the Court in declining to enter the Approval Order in the form substantially as submitted by the Parties.

69.     Procedures for Termination:  To terminate this Settlement Agreement, Plaintiffs' Counsel or counsel for Defendant shall give written notice to the opposing counsel no later than:

(a)     Fifteen (15) business days after the Court declines to approve the Settlement Agreement; or

     (b)    Fifteen (15) business days after the settlement as agreed does not become final for any other reason.

70.    Effect of Termination: In the event that this Settlement Agreement is canceled, rescinded, terminated, voided, or nullified as contemplated by its terms, or the settlement of the Litigation is barred by operation of law, is invalidated, is not approved or otherwise is ordered not to be carried out by any Court:

     (a)    The Settlement Agreement shall be terminated and have no force or effect, and no Party shall be bound by any of its terms;

     (b)    Released Persons shall have no obligation to make any payments of any kind to any Plaintiffs or Plaintiffs' Counsel;

     (c)    Any Approval Order shall be vacated; and

     (d)    The Settlement Agreement and all negotiations, statements and proceedings relating thereto shall be without prejudice to the rights of any of the Parties, all of whom shall be restored to their respective positions in the Litigation prior to the settlement.

## XII.  PARTIES' AUTHORITY

71.    The signatories hereby represent that they are fully authorized to enter into this Settlement Agreement and bind the Parties hereto to the terms and conditions hereof.

72.    Representative Plaintiff acknowledges that, consistent with the language set forth in the consent forms filed by Plaintiffs, he is, together with Plaintiffs' Counsel, fully authorized to bind Plaintiffs to all terms set forth in this Settlement Agreement, regardless of whether each Plaintiff timely submits a fully completed Consent Form or is dismissed by the Court pursuant to the Settlement Agreement.

73.    It is agreed that because Plaintiffs are numerous, it is impossible or impractical to have each Plaintiff execute the Settlement Agreement. The Settlement Notice will advise all Plaintiffs of the binding nature of the release, and that the release will have the same force and effect upon Plaintiffs as if the Settlement Agreement were executed by each Plaintiff.

## XIII. NOTICES

74.     Unless otherwise specifically provided herein, all notices, demands or other communications given hereunder shall be in writing and shall be deemed to have been duly given as of the third business day after mailing by United States registered or certified mail, return receipt requested, addressed as follows:

Jacqueline E. Kalk
LITTLER MENDELSON, P.C.
3424 Peachtree Road NE
Suite 1200, Monarch Tower
Atlanta, Georgia 30326
T: (404) 233-0330
F: (404) 233-2361
jkalk@littler.com

Jesse L. Young
SOMMERS SCHWARTZ, P.C.
141 E. Michigan Ave., Suite 600
Kalamazoo, Michigan 49007
T: (269) 250-7500
jyoung@sommerspc.com

Neil B. Pioch
LITTLER MENDELSON, P.C.
500 Woodward Ave.
Suite 2600
Detroit, Michigan 28226
T: (313) 446-6400
F: (313) 446-6405
npioch@littler.com

Jonathan Melmed
Laura Supanich
MELMED LAW GROUP, P.C.
1801 Century Park East, Suite 850
Los Angeles, California 90067
T: (310) 824-3838
jm@melmedlaw.com
lms@melmedlaw.com

Attorneys for Defendant and the
Released Parties

Attorneys for Plaintiff and the
Collective

## XIV.  CONSTRUCTION AND INTERPRETATION

75.     The Parties hereto agree that the terms and conditions of the Settlement Agreement are the result of lengthy, intensive, arms-length negotiations among the Parties, and the Settlement Agreement shall not be construed in favor of or against any party by reason of the extent to which any Party or his, her or its counsel participated in the drafting of the Settlement Agreement.

76.     Article titles are inserted as a matter of convenience for reference, and in no way define, limit, extend, or describe the scope of this Settlement Agreement or its provisions. Each term of this Settlement Agreement is contractual and not merely a recital.

77.     This Settlement Agreement shall be subject to and governed by the laws of the State of Michigan and subject to the continuing jurisdiction of the United States District Court for the Eastern District of Michigan.

## XV.   FORM AND CONTENT RESOLUTION

78.     The Parties agree they must reach agreement on the form and content of the proposed Approval Order.

79.     The Parties agree that in the event they dispute and reach impasse as to the form and content of any documents necessary to effectuate the Settlement Agreement that cannot be resolved among the Parties themselves, any and all such disputes may be submitted to the Court for final and binding resolution.

## XVI.  INTEGRATION CLAUSE

80.     This Settlement Agreement sets forth the entire agreement between the Parties hereto and fully supersedes any and all prior agreements or understandings, written or oral, between the Parties pertaining to the subject matter hereof, including, but not limited to, any and all written and oral agreements reached between the Parties before, during and subsequent to the mediation a that resulted in this Settlement Agreement. This Integration Clause does not apply to the confidentiality agreement entered into by the Parties as part of the mediation with Mediator David Phillips and does not apply to the Release Forms. If Plaintiffs signed a Confidentiality, Non-Solicitation and/or Non-Compete Agreement in favor of Defendant, Plaintiffs agree to remain bound by the terms of that Agreement.

## XVII. BINDING ON ASSIGNS

81.     This Settlement Agreement shall be binding upon and inure to the benefit of the Parties and their respective agents, heirs, beneficiaries, devisees, legatees, executors, administrators, trustees, conservators, guardians, estates, personal representatives, successors-in interest, and assigns.

## XVIII.        INDEMNIFICATION

82.     Plaintiffs, each of them, agree to hold harmless Defendant in the event that any governmental taxing authority asserts against Defendant any claim for any Plaintiffs' unpaid taxes, penalties or interest based upon the allocation and/or

18

payment of the Plaintiffs' Individual Settlement Payments and any Service Payment owed by any Plaintiff.

## XIX.  MODIFICATION

83.    No rights hereunder may be waived or modified except in a writing signed by duly authorized representatives of the Parties.

## XX.  COUNTERPARTS

84.    The Settlement Agreement may be executed in counterparts, and when each designated signatory has signed and delivered at least one such counterpart, each counterpart shall be deemed an original, and, when taken together with other signed counterparts, shall constitute one Settlement Agreement, which shall be binding upon and effective as to all Parties.

## XI.  DISMISSAL WITH PREJUDICE

85.    Within ten (10) calendar days after the Effective Date, the Parties agree to submit a stipulation for dismissal with prejudice (if necessary), but allowing this Court to retain jurisdiction to oversee the administration of the settlement process until its completion to allow for speedy resolution of disputes that may arise during the administration of the settlement process.

IN WITNESS WHEREOF, they have duly executed this Settlement Agreement:

By: _____          By: _____
~~John Barker, Senior Counsel~~                Antwaine Clark
H.B. Fuller Co. & Released Parties          Representative Plaintiff
*Robert Martsching, VP Corporate Controller*

DATED: June ___, 2024

19

## **EXHIBIT A**

I previously consented to having my wage claims prosecuted and settled in this litigation and I now understand that by signing, dating, and endorsing this check, I am bound by bound by the Release contained in the Settlement Agreement and Release of Claims.

**EXHIBIT B**
**SETTLEMENT NOTICE**

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

ANTWAINE CLARKE, individually,          Case No.: 2:23-cv-11648
and on behalf of all others similarly
situated,

     Plaintiff,

v.

ADCO PRODUCTS INC., a Delaware
corporation,

     Defendant.

---

**NOTICE OF SETTLEMENT FOR POTENTIAL OPT-IN PLAINTIFFS**

**PLEASE READ THIS NOTICE CAREFULLY**
**YOUR LEGAL RIGHTS WILL BE AFFECTED**

---

**A CONSENT TO JOIN FOR [INSERT NAME] IS ENCLOSED**

---

You are receiving this Notice because you may choose to participate in a lawsuit entitled *Antwaine Clarke v. ADCO Products, Inc*., Case No. 23-cv-11648, in the United States District Court for the Eastern District of Michigan, as an Opt-In Plaintiff.  The Parties reached an agreement to settle this lawsuit ("Settlement Agreement"). The Settlement Agreement was submitted to the Court for approval, and the Court approved the Settlement Agreement on [ADD DATE].

Should you consent to join this action, your share of the Settlement is estimated to be $[INSERT AMOUNT] and you will receive a check for this settlement share in approximately 30 days.  Fifty percent of your settlement share shall be paid as W-2 wages—subject to usual payroll taxes and withholdings—and fifty percent as a 1099 payment settlement payment will be reported as taxable income on an IRS Form 1099.  This Notice describes the lawsuit, the settlement details and release of the claims, and the way in which your settlement payment was calculated. Please read

it carefully as it contains important information regarding the lawsuit and settlement. Please also be sure to confirm that your address is up to date as requested in Sections VI and VII of this Notice below.

## I.    DESCRIPTION OF THE LITIGATION

On July 12, 2023, Plaintiff Antwaine Clarke ("Clarke"), filed a lawsuit against ADCO Products, LLC (incorrectly identified as ADCO Products, Inc. in the Complaint), (ADCO), styled *Clarke v. ADCO Products, Inc*., Case No. 23-cv-11648, in the United States District Court for the Eastern District of Michigan.  In his Complaint, Clarke asserted violations of the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* ("FLSA").  Clarke alleges that ADCO failed to include certain shift differentials and other payments as required by the FLSA in calculating and paying overtime wages.  Clarke brought his claims on behalf of himself as well as those similarly situated.  The scope of this settlement was expanded to include not only ADCO, but the H.B. Fuller Company and various related entities that shall be known as the Released Persons.[1]  ADCO denies Plaintiff's allegations and has asserted various affirmative defenses.

---

[1] "Released Persons" refers to ADCO Products, Inc., H.B. Fuller Company; Adhesives Packaging Specialties LLC, Peabody, MA; Bacon Adhesives, Irvine, CA; Engent Inc., Norcross, GA; Extreme Adhesives, Raymond, NH; HB Fuller, Aurora, IL; HB Fuller, Bellevue, OH; HB Fuller, Blue Ash, OH; HB Fuller, Covington, GA; HB Fuller, Elgin, IL; HB Fuller, Frankfort, IL; HB Fuller, Fridley, MN; HB Fuller, Grand Rapids, MI; HB Fuller, Maple Grove, MN; HB Fuller, Mesquite, TX; HB Fuller, Paducah, KY; HB Fuller Pilot Facility, MN; HB Fuller, Roseville, CA; HB Fuller, Scottsdale, IL; HB Fuller, Seneca, IL; HB Fuller, St. Paul, MN; HB Fuller, Tucker, GA; HB Fuller, Vancouver, WA; HB Fuller Home Baased Employees (multiple states); HB Fuller Construction Products, Dalton, GA; HB Fuller Construction Products, Edison, NJ; HB Fuller Construction Products, Gainesville, FL; HB Fuller Construction Products, Houston, TX; HB Fuller Construction Products, La Mirada, CA; HB Fuller Construction Products, La Mirada (Production), CA; HB Fuller Construction Products, Mansfield, TX; Royal Adhesives and Sealants, Wilmington, CA; Royal Adhesives and Sealants, Ball Ground, GA; Royal Adhesives and Sealants, Simpsonville, SC; Royal Adhesives and Sealants, Syracuse, NY; and Royal Adhesives and Sealants, Wilmington, CA, and their past, present, and future parent companies, affiliates, subsidiaries, divisions, predecessors, successors, partners, owners, joint venturers, affiliated organizations, and each of their shareholders, insurers, reinsurers and assigns, and each of their past, present and future officers, directors, trustees, agents, employees, attorneys, contractors,

You are one of the collective members who worked as an hourly non-overtime exempt employee at one of the facilities identified in footnote 1 during the applicable time period. If you sign and return the **enclosed** Consent To Join form, you will have chosen Plaintiffs' Counsel, Sommers Schwartz, P.C. and Melmed Law Group P.C. to represent you in this case.

The Parties have investigated the facts, made a thorough study of the legal principles applicable to the claims asserted in the litigation and mediated this case with an independent mediator who is knowledgeable in wage-and-hour law. Based upon Plaintiffs' investigation, legal evaluation, and taking into account the contested legal and factual issues involved, including the assessment of the uncertainties of litigation and the relative benefits conferred upon the Plaintiffs pursuant to the Settlement Agreement, Plaintiff has concluded that the settlement with ADCO, H.B. Fuller Company and the other Released Persons on the terms set forth in the Settlement Agreement is fair, reasonable, adequate, and in the best interests of the Releasing Persons.[2] The parties submitted the Settlement Agreement to the Court, which approved the Settlement Agreement on [APPROVAL DATE].

ADCO, H.B. Fuller Company and the other Released Persons expressly deny any liability or wrongdoing of any kind associated with the claims in the litigation. ADCO, H.B. Fuller Company and the other Released Persons contend that they complied with applicable federal and state law at all times. By entering into the Settlement Agreement for and on behalf of itself and the Released Persons, ADCO, H.B. Fuller Company and the other Released Persons do not admit any liability or wrongdoing and expressly deny same. ADCO, H.B. Fuller Company and the other Released Persons state that they entered into the Settlement Agreement solely for the purpose of avoiding the costs and disruption of further litigation and deny any and all liability.

---

representatives, employee benefits or welfare programs or plans (including the administrators, trustees, fiduciaries, and insurers of such programs or plans) sponsored or administered by Defendant (including its affiliates), and any other persons or entities acting on its or their behalf, and any party that was or could have been named as a defendant in the Litigation

[2] "Releasing Persons" means Opt-In Plaintiffs, each one, and his or her respective agents, heirs, beneficiaries, devisees, legatees, executors, administrators, trustees, conservators, guardians, estates, personal representatives, successors-in-interest, and assigns that accepts payment of his or her pro rata share of the settlement.

## II.    SETTLEMENT DETAILS

Under the terms of the settlement, Defendant will pay $650,000.00, which represents the maximum amount that Defendant would pay pursuant to this Settlement Agreement, regardless of distribution, and is inclusive of final settlement payments, Plaintiffs' Counsel's fees and costs, Service Payment, and Settlement Administration Costs.  Plaintiff's costs not to exceed $20,000.00 are to be paid out of the gross settlement amount in addition to Plaintiffs' Counsel's fees of $216,666.66.  Additionally, Settlement Administrator costs in an amount not to exceed $20,000.00 are to be paid from gross settlement amount.

The Parties agree that Plaintiff Antwaine Clarke can receive from the Maximum Gross Settlement Amount a Service Payment in an amount of $2,500.  The Service Payment will be made to Representative Plaintiff in recognition of the work and services he contributed to the respective case in the Litigation including, but not limited to, investigative work, meetings with Plaintiffs' Counsel, assumption of risks, and serving as the putative collective action representative.

Each final Settlement Payment will be allocated as follows: fifty percent (50%) of the total Settlement Payment due to each Opt-In Plaintiff shall be paid as W-2 wages—subject to usual payroll taxes and withholdings—and fifty percent (50%) as a 1099 payment.

## III.    RELEASE OF CLAIMS

The Settlement Agreement contains a release. As an Opt-In Plaintiff, you and the Releasing Persons shall be deemed to forever completely settle, compromise, release, and discharge ADCO, H.B. Fuller Company and the other Released Persons from any and all wage claims based on alleged base rate miscalculations that were pled or which could have been pleaded based on the facts alleged in the Litigation, which accrued at any time between July 12, 2020 and September 1, 2023 ("Release Period"). The full text of the Release to which you are agreeing is contained in the Settlement Agreement. If you would like a copy, please contact Plaintiffs' counsel.

You are bound by the terms and conditions of the Settlement Agreement, the Court's Approval Order, the judgment, and the release set forth herein. You may obtain a copy of these documents by contacting the Settlement Administrator at [number] or contacting the Plaintiffs' lawyers listed in Section VII below. The release of claims

will have the same force and effect upon Opt-In Plaintiffs as if the Settlement Agreement were executed by each Plaintiff.

## IV.   ADDRESS INFORMATION

Atticus Administration, LLC is acting as the third-party administrator of the Settlement Agreement (the "Third Party Administrator"). The Third Party Administrator has ☐ as your current mailing address. If you would like to receive your payment or any other correspondence regarding this lawsuit or Settlement Agreement at a different address, please provide that address to the Third Party Administrator by [method of doing so].

## VI.   SETTLEMENT PAYMENT INFORMATION

As stated above, your share of the settlement is estimated to be **$[ADD]**. Your settlement payment is based on the number of workweeks you were engaged by the Released Persons during the Release Period.

## VII.   ADDITIONAL INFORMATION

Questions about the settlement or requests for additional information should be directed to Plaintiffs' Counsel Sommers Schwartz, P.C. and Melmed Law Group P.C.

Jesse L. Young
Sommers Schwartz, P.C.
141 E. Michigan Avenue, Suite 600
Kalamazoo, Michigan 49007
jyoung@sommerspc.com

Jonathan Melmed
Melmed Law Group P.C.
1801 Century Park E, #850
Los Angeles, California 90067
jm@melmedlaw.com

The pleadings and other records in the litigation may be examined at any time during regular business hours at the Office of the Clerk of the United States District Court for the Eastern District of Michigan, 231 W. Lafayette Blvd., Detroit, Michigan 48226.

**PLEASE DO NOT TELEPHONE THE COURT FOR INFORMATION REGARDING THIS SETTLEMENT**

**CONSENT TO JOIN**

I consent to join this action and join in the settlement.  I CHOOSE the law firm of and attorneys at **SOMMERS SCHWARTZ, P.C. and MELMED LAW GROUP P.C.**, as my attorneys to represent me in this lawsuit and settlement. I consent to having Plaintiff Antwaine Clarke and Plaintiffs' Counsel make all decisions regarding the litigation, the method and manner of conducting this litigation, the terms of the settlement of this litigation, the releasing of claims, and all other matters pertaining to the lawsuit and settlement.


Dated: _____, 2024


_____
[INSERT NAME]